UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL NORRIS,

    Plaintiff,

v.

ARIFF MEHTER, et al.

    Defendants.

Case No. 1:13-cv-48

Spiegel, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

On February 7, 2013, Plaintiff, proceeding *pro se* and *in forma pauperis*, initiated this employment discrimination case against three individuals, based upon alleged age, disability, and race discrimination. Pursuant to local practice, the case has been referred to the undersigned magistrate judge for disposition of all pretrial matters, including the filing of a Report and Recommendation ("R&R") on any dispositive motions. *See* 28 U.S.C. §636(b).

**I. Background**

As stated, Plaintiff began this litigation as a *pro se* litigant. A portion of the form used by *pro se* litigants that was completed by Plaintiff asks the litigant to provide a brief statement of the facts of his or her case, including a description of how each defendant is involved, the names of other persons involved, and relevant dates and places. (Doc. 3 at 2). The entirety of the narrative portion of Plaintiff's initial complaint stated the following: "racial discrimination disabilities, age discriminations." (Doc. 3 at 2). Plaintiff also attached to his complaint a copy of his EEOC Notice, dated October 22, 2012,

notifying him of his right to sue "the respondent(s)" within 90 days. (Doc. 3 at 4-5). The individuals originally named as Defendants to Plaintiff's complaint filed separate motions to dismiss; a copy of Plaintiff's original charge of discrimination was attached as an exhibit to one of the motions. (Doc. 6-1).

On June 11, 2013, the undersigned filed an R&R recommending that the Court grant both motions by the individual Defendants to dismiss all claims, pursuant to Rule 12(b)(1) and 12(b)(6). (Docs. 6, 7, 12). No timely objections were filed to that R&R. However, on June 20, 2013, after obtaining counsel, Plaintiff filed a motion seeking to amend his complaint to add as a new party the City of Cincinnati ("the City"). (Doc. 13). The undersigned granted that unopposed motion, (Doc. 14), permitting Plaintiff to file his amended complaint up to and including August 15, 2013. Thereafter, the undersigned filed a second R&R in which the Court recommended continuation of proceedings against the newly named (and sole remaining) Defendant City, conditioned on the timely filing of an amended complaint. (Doc. 15). Because the amended complaint had not then been filed, the undersigned explained that the case should remain open only insofar as the amended complaint contained "additional factual allegations" that "may state a claim against" the City. The presiding district judge adopted that R&R for the opinion of the Court on February 28, 2014. (Doc. 25).

Pursuant to the Court's order, Plaintiff timely filed his amended complaint on August 14, 2013, (Doc. 16). Plaintiff's amended complaint, through counsel, is significantly longer and more detailed than his original pleading, setting forth five separate causes of action in forty-five (45) paragraphs, and comprising six (6) pages. (Doc. 16). However, the Defendant City has moved to dismiss, arguing that Plaintiff's

amended complaint continues to be legally deficient. After being granted two extensions of time, Plaintiff filed a response in opposition on November 14, 2013. (Doc. 24). It does not appear that the parties have yet engaged in substantial discovery; no Rule 26(f) report has been filed or scheduling order entered.

Having reviewed Defendant's motion to dismiss and Plaintiff's response, the undersigned now recommends that Defendant's motion be denied, but without prejudice to Defendant's right to file a later dispositive motion on similar grounds following the completion of discovery. Consistent with this recommendation, the parties are directed to file a Rule 26(f) report by March 31, 2014.

## II. Analysis

### A. *Iqbal/Twombly* Standard of Review

Defendant's motion seeks dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, pursuant to Rule 12(b)(2), for lack of personal jurisdiction, and pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Despite citing to other provisions of Rule 12, virtually all of the argument contained in Defendant's memorandum in support relates to Rule 12(b)(6).

As discussed in the prior R&R (Doc. 15) recommending the dismissal of Plaintiff's initial *pro se* complaint, dismissal is required when a complaint offers no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," in violation of the *Iqbal/Twombly* plausibility standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff's complaint "must contain sufficient factual matter,

3

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint does not need to contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The general standard of review applicable to a motion to dismiss limits consideration to the pleadings. However, in this instance, Defendant's motion includes an affidavit from a City physician, and Plaintiff's response attaches the affidavit of the Plaintiff. To that limited extent, the undersigned treats Defendant's Rule 12(b)(6) motion as one for summary judgment. *See* Rule 12(d), Fed. R. Civ. P.

### B. Defendant City's Arguments for Dismissal

#### 1. ADA Claim (Count One)

Count One of Plaintiff's amended complaint purports to set forth a claim for a "violation of ADA" and a related Ohio statute. In support of this claim, he alleges that he suffered a work-related rotator cuff strain "[a]round 2009," and that around the same time, he underwent a procedure to place a stint in his chest for kidney dialysis. (Doc. 16 at ¶¶10, 11). After completing a work-hardening program, the City's physician told Plaintiff, without explanation and without any accommodations being provided, that he could not return to work. (*Id.* at ¶12, 13).

4

The Americans with Disabilities Act ("ADA") requires employers to make "reasonable" accommodations to any "qualified individual" with a disability who "can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). However, Defendant argues that Plaintiff's claim should be dismissed because Plaintiff failed to sign a release for his medical records, as requested by the City physician for the purpose of allowing him to determine any disability that Plaintiff may have. Defendant has attached a short Memorandum/letter dated November 14, 2011, to the Senior Environmental Safety Specialist, Public Service Department, from Dr. Ariff Mehter of the Employee Health Service, that states:

> Mr. Michael Norris was seen at Employee Health Service on 11/7/11 regarding his ability to return to unrestricted work. Mr. Norris refused to sign a release for his medical records. As a result, I am not able to give my opinion regarding his fitness for duty.

(Doc. 18-1).

Plaintiff argues that Defendant's argument is "self serving" and does not require dismissal of his ADA claim, which he insists is based at least in part on his work-related injury, for which he was treated through the employer's "work hardening" program with NovaCare. (*See also* Plaintiff's Affidavit, Doc. 24-1).

The undersigned declines to recommend a dismissal of Plaintiff's ADA claim on the record presented, and in the context of a Rule 12(b)(6) motion. The memorandum tendered by Defendant is not authenticated and is asserted by Plaintiff to be "factually incorrect." (Doc. 24 at 1). Even assuming that the memorandum was authenticated, there still may be genuine issues of material fact as to whether Defendant knew or should have known of Plaintiff's alleged disability even without the release of records requested on November 7, 2011, whether Plaintiff offered other proof of his disability (or

5

the requested records) either before or after that date, whether Dr. Mehter actually examined Plaintiff, and/or whether Defendant could be held liable for failing to offer some "reasonable" accommodations. In short, Plaintiff's amended complaint is not so deficient as to be subject to dismissal on its face, and the factual record is insufficient at this point in time to conclude that Defendant is entitled to judgment as a matter of law.

### 2. Racial Discrimination (Second Count)

Count Two of Plaintiff's amended complaint attempts to set forth a claim for "racial discrimination" in violation of both Title VII and comparable Ohio law. However, the City argues that Plaintiff has failed to state a claim of racial discrimination.

Plaintiff identifies himself as "a black male and member of a protected class." In support of this second claim, Plaintiff alleges that he "was subjected to unprofessional behavior and treatment by upper level management and immediate supervisors including being talked to in a condescending manner, embarrassment in front of peers and overall treatment afforded 'field hands.'" (Doc. 15 at ¶14, *see also id.* at ¶25). In addition, he alleges he was "constantly subjected to racial slurs by supervisors." (*Id.* at ¶15). He further alleges that "Defendant allowed an atmosphere of racial disparity and discrimination, in which minority employees were regularly disparaged by white counterparts," and that although Plaintiff "reported this behavior," "nothing was done to prevent the continuing discriminatory behavior." (*Id.* at ¶¶23, 24). Plaintiff alleges that the City's actions were "reckless and intentional…and ….meant to harass the Plaintiff into quitting." (*Id.* at ¶26).

Defendant argues that Plaintiff has failed to properly allege that members outside the protected class were treated differently than he was, or that he suffered an adverse employment action as a result of his more general allegations of racial discrimination.

The undersigned again finds dismissal at this stage of the proceedings to be inappropriate.  Defendant cites no controlling authority, and the undersigned finds none, that would require an explicit statement that members outside the protected class were treated differently than he was in the face of a complaint that so strongly implies that fact.  Here, Plaintiff's allegations of "racial *disparity* and discrimination" whereby "minority employees were regularly disparaged by white counterparts," appear sufficient as a matter of law, given the commonly understood definition of the term "disparity." (Doc. 15 at ¶23, italics added).

The issue of whether Plaintiff has properly pleaded an adverse employment action is closer, insofar as Plaintiff appears to have pleaded only being "continually subjected to racial slurs, taunts and 'jokes,'" and not necessarily the type of adverse employment action that is actionable under Title VII and the related Ohio Revised Code, Chapter 4112.  Nevertheless, the undersigned will recommend that Plaintiff's claim proceed at this preliminary stage of review.

### 3. ADEA (Third Count)

Count Three of Plaintiff's amended complaint alleges that the Defendant City violated the Age Discrimination Employment Act ("ADEA"), and analogous Ohio law, as well as 42 U.S.C. §1981 and 42 U.S.C. §1983.[1]  (Doc. 16 at ¶28).  As supporting allegations, Plaintiff alleges that he is over the age of 40, and that "Management, starting in 2008 up to Plaintiff's termination, on numerous occasions told Plaintiff that he

---

[1] Defendant's motion does not address Plaintiff's claim under the latter two statutes.

was too old to do the job." (*Id.* at ¶30).  Plaintiff further alleges that he was wrongfully terminated "and replaced…with a younger employee."  (*Id.* at ¶31).

Under the ADEA, a plaintiff must prove that the employer took an adverse employment action "because of" the individual's age.  *See Gross v. FBL Financial Servs.*, 557 U.S. 167, 177 (2009).  In other words, in order to prove his claim, Plaintiff must prove that the adverse employment action would not have occurred "but for" his age.  *Id.; see also Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009)(applying *McDonnell Douglas* framework post-*Gross*).  Defendant argues that Plaintiff's contention that he was discharged due to an unspecified medical issue, (*see* Doc. 16 at ¶¶12-13, 17-21), is incompatible with his ADEA claim, because Plaintiff cannot show that he would not have been terminated "but for" his age.

The undersigned declines to dismiss Plaintiff's ADEA claim on the ground asserted by Defendant, because a plaintiff may plead alternative causes of action.

Defendant also argues that Plaintiff "does not claim that a younger person actually did take his position."  (Doc. 18 at 6).  Contrary to that contention, however, paragraph 31 of Plaintiff's complaint alleges that Defendant "wrongfully terminated Plaintiff and replaced plaintiff with a younger employee despite the fact that Plaintiff was capable of performing the job," while the next paragraph alleges that "said termination was intentionally done in order to remove Plaintiff to allow a younger person to work in Plaintiff's place." (*Id.* at ¶32).

### 4. Retaliation/Public Policy (Fourth Count)

Count Four of Plaintiff's amended complaint alleges that the Defendant City engaged in retaliation against Plaintiff in violation of "State and Federal Law and

8

contrary to public policy embodied in the statutes, code and case law of the State of Ohio and United States...." (Doc. 16 at ¶38). The Defendant City, inferring that Plaintiff is attempting to state a Title VII retaliation claim, argues that the claim is subject to dismissal based upon Plaintiff's failure to show that he engaged in protected activity that was known to the Defendant City. The Defendant points out that Plaintiff alleges only that he "complained of discriminatory treatment and racial disparity he experienced from 2003 to the point he was terminated, and was retaliated against by his superiors and immediate supervisors," but Plaintiff fails to allege what if any specific adverse employment action was taken in relation to his complaints.

Notwithstanding Defendant's argument, Plaintiff does reference that the unspecified retaliatory behavior "was a direct result" of Plaintiff's use of "the grievance process" for his discrimination complaints. (Doc. 16 at ¶36). In addition, in his affidavit filed as an exhibit to his response to Defendant's motion, Plaintiff alleges that he "was retaliated against when I was not allowed to return to work after undergoing a 'work hardening' program through NovaCare." (Doc. 24-1 at ¶7). As with Plaintiff's other claims, the undersigned concludes that Plaintiff's retaliation claim should not be subject to dismissal under Rule 12(b)(6) for failing to allege adverse employment action.

Defendant also contends that Plaintiff's "general reference to a union grievance is not sufficient to equate with protected activity" under Title VII. *See, e.g., Gonzalez v. New York City Transit Authority*, 2001 WL 492448, 2001 U.S. Dist. LEXIS 5908 (S.D.N.Y. May 9,2001)(R&R holding that the filing of a union grievance did not constitute "protected activity" where the grievance did not discuss discrimination or Title VII). Defendant does not cite to controlling case law from the Sixth Circuit on this issue,

and the cases that are cited allow for a union grievance to constitute "protected activity" so long as it presents Title VII or similar discriminatory issues. In addition, the allegations in Plaintiff's complaint do not actually describe the "grievance" as a "union grievance," do not explain whether he presented Title VII issues in that context, and do not identify whether the complaints that Plaintiff allegedly made to his supervisors were limited to union proceedings, or whether he is attempting to claim some other protected activity.  For that reason, dismissal at this stage of the litigation is not recommended.

### 5.  Malicious/Reckless/Wantonness [sic] (Fifth Count)

Count Five of Plaintiff's amended complaint alleges that the Defendant City's actions "were done out of malice, recklessness and/or wanton behavior," that the discriminatory treatment "was intentionally done" in a manner intended to "ouster [sic] Plaintiff from his job," and encouraged and sanctioned by Plaintiff's supervisors.  (Doc. 16 at ¶¶38-40).  Plaintiff alleges that "under Ohio Law a municipality may be held liable for injuries caused by an official of the municipality who is in the course of performing their duties if said officials [sic] actions are malicious, reckless or wanton."  (*Id*. at ¶44). Plaintiff seeks an award of punitive damages based upon Defendant's "wanton" behavior.  (Doc. 16 at ¶45).  Defendant's present motion does not address Plaintiff's claim for punitive damages.

### III.  Conclusion

Even though this case has been pending for over a year, it is still quite early in the litigation process, due in part to the late entrance of counsel on Plaintiff's behalf, the filing of an amended complaint naming the City as a new Defendant, and the City's decision to file a motion to dismiss (as was its right) in lieu of an answer.  While Plaintiff

now proceeds through counsel, it is evident from the amended complaint and the City's motion that many of his claims are supported by relatively few factual allegations. Still, for the reasons discussed, I do not find the claims to be so conclusory – or the material facts so undisputed - that Plaintiff's complaint is subject to dismissal for failure to state a claim either on the pleadings, or in consideration of the single exhibit offered by Defendant in support of its motion to dismiss. In short, Plaintiff is entitled to proceed with discovery. If after discovery has been completed the City has reason to re-file a dispositive motion on similar grounds, pursuant to Rule 56, it may do so at that time.

For the reasons stated, **IT IS RECOMMENDED THAT** Defendant's motion to dismiss (Doc. 18) be **DENIED**.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL NORRIS,  Case No. 1:13-cv-48

    Plaintiff,  Spiegel, J.
                                                                                       Bowman, M.J.
    v.

ARIFF MEHTER, et al.

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).